ZEARING *v.* CRAWFORD, McGREGOR & CAMBY COMPANY.

Opinion delivered February 26, 1912.

1. EVIDENCE—VARYING WRITING BY PAROL.—All antecedent proposals and negotiations become merged in a written contract, which can not be varied by parol testimony.    (Page 579.)

2. VENDOR AND PURCHASER—OPTION.—Where the owner of land agreed to sell certain growing timber upon certain conditions, the transaction is not a contract of sale but an option to purchase.    (Page 579.)

3. SAME—OPTION—TIME.—Under a contract which is merely an option to buy land, the time specified for performance is of its essence; and, before the purchaser can claim the right to perform it, he must show performance on his part, or an offer to perform, within the time specified.   (Page 580.)

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; reversed.

1.   The court's finding with reference to the estimate amounts in effect to making a new contract between the parties, one which was never in contemplation by them.    Courts have no such power, but are limited to construing, reforming, enforcing or cancelling a contract—never to making a contract.    2 Parsons on Contracts, (9 ed.) 651, 655.

2.   The evidence is not sufficient to justify a decree for specific performance.

3.   The extension of the option was without consideration and conferred no rights.    10 Mont. 5.

*Manning & Emerson,* for appellee.

1.   It is conceded that courts can not make contracts for people, but that is not what the court did in this case.    It sought to ascertain the intention of the parties, and to enforce it accordingly.    With reference to the estimate, the court found that that part of the contract was solely for the benefit

and option of appellee; that appellant was satisfied that there was one and a half million feet of the timber and willing to sell it on that basis as to amount, at $3.00 per thousand. Appellee could and did waive its right to have the timber estimated.

The evidence is clear that appellee was given the option to take the timber at any time during the life of the option at a million and a half feet at the above price.

2. It is not necessary, in order to justify a decree for specific performance, that the evidence be so clear and convincing as to make it practically conclusive, although it is so in this case, but it is sufficient if the contract be "proved with a reasonable degree of certainty." 63 Ark. 100, 105.

This contract, having been prepared by appellant's counsel, with the aid of its vice president and general manager, should be construed, where there is any ambiguity, most strongly against appellant. 74 Ark. 41-5; 73 Ark. 338-42; 80 Ark. 209-12. See also 110 Pac. (Wash.) 9.

3. The original consideration of $100 was a sufficient basis for the extension—but no consideration was necessary. The extension of the option was a mere proposition which, when accepted, and when appellee tendered compliance with its terms, became a valid and binding contract. 12 S. E. 464; 10 Mont. 5, 24 Pac. 695.

McCULLOCH, C. J. The Stoneman-Zearing Lumber Company (a corporation) owned a tract of timber land in White County, Arkansas, containing about 15,000 acres, and on September 20, 1906, entered into a written contract with appellee whereby it gave the latter an option to purchase the persimmon timber on said land. This is a suit instituted by appellee to compel specific performance of the contract, and after its institution appellant, Fannie M. Zearing, was appointed as receiver of the Stoneman-Zearing Lumber Company, and substituted as defendant. The contract (omitting caption) reads as follows:

"That the Stoneman-Zearing Lumber Company, a corporation created as aforesaid, and doing business as aforesaid, in consideration of one hundred dollars to it paid, * * * do hereby sell, give and grant to the said Clarendon Last Block Works, H. S. Matthewman, general manager, an option on all of the persimmon timber upon the following described lands,

lying and being situate in White County, Arkansas, towit:
(here follows description) for a period of thirty days from date
hereof, with the privilege of an extension for thirty days longer,
in case of overflow or sickness.

"It being expressly agreed and understood that the said
Stoneman-Zearing Lumber Company is to furnish at its ex-
pense a man to assist in estimating said persimmon timber on
said land, and the said H. S. Matthewman, general manager
of the Clarendon Last Block Works is to furnish at its expense
a man to represent it in the estimation of said timber, and that
the expenses for boats, provisions, additional help, etc., while
estimating and in estimating said timber, is to be borne equally
by each of said corporations, and that, as soon as said estimate
is made and agreed upon by the parties representing each of
said corporations, the said H. S. Matthewman, general manager
of the Clarendon Last Block Works, or the Clarendon Last
Block Works, are to pay to the Stoneman-Zearing Lumber
Company three dollars per thousand feet for said persimmon
timber, according to the estimate agreed upon.

"It being expressly agreed and understood that said es-
timate must be completed and agreed upon in thirty days from
the date of this option, except as aforesaid, in case of high water
or sickness, in which said event the time is to be extended
thirty days longer, and in no event shall said option be extended
longer than sixty days, and, in case of high water or sickness
as aforesaid, said timber must be paid for within sixty days.

"It is expressly agreed and understood that, after said
timber has been estimated and agreed upon and same paid for
at the price aforesaid, ($3.00 per thousand), the said Stoneman-
Zearing Lumber Company is to execute and deliver to the said
H. S. Matthewman, general manager of the Clarendon Last
Block Works, a timber deed to all of the persimmon timber
standing upon the above described lands, and is to give him
the right, authority and license for ten years from date of said
deed to go upon, over and across any of said lands with wagons
and teams in the getting of said timber out.

"It is further expressly agreed and understood that should
the said Stoneman-Zearing Lumber Company and H. S. Mat-
thewman, as general manager, etc., as aforesaid, fail to agree
upon an estimate of said timber, or, after agreeing to same,

should the said H. S. Matthewman, as general manager as aforesaid, or any one for him or said Clarendon Last Block Works, fail to pay for said persimmon timber at the price of $3 per thousand feet on said estimate, then the said $100 paid as aforesaid shall forfeit to the said Stoneman-Zearing Lumber Company, and belong to and become theirs, but should the said H. S. Matthewman, as general manager as aforesaid, pay for said timber as herein provided, the $100 as aforesaid is to be and become a part of the purchase money therefor."

Appellee was operating in that territory under the name of Clarendon Last Block Works, having a mill at Clarendon, Arkansas, for the manufacture of shoe lasts, golf heads and shuttle blocks. On October 17, 1906, appellee, by letter, asked for an extension of the option until January 1, 1907, and this was granted. Appellee's manager, Mr. Matthewman, in making the request for extension, pleaded bad weather and high water as having prevented making an estimate of the timber. Nothing further was done under the contract—no estimate of the timber was made by either party—and on December 31, 1906, appellee's manager tendered to the Stoneman-Zearing Lumber Company the sum of $4,400 to cover the price of the timber (after deducting the sum of $100 paid at the time of executing the contract), according to an estimate of 1,500,000 feet of timber said to have been made by an agent of Stoneman-Zearing Lumber Company prior to the time that the option contract was entered into. The agent's name is Nimmo, and the evidence tends to show that he made an estimate of the timber for his employer, the Stoneman-Zearing Lumber Company, in July or August, 1906, when the land was purchased by the latter, that he negotiated the sale of the timber to appellee and represented to appellee, during the negotiations, that there were 1,500,000 feet of persimmon timber on the land, and offered to let appellee take the timber on that estimate. That was on the day the option contract was entered into. Appellee declined to purchase the timber on that estimate, and the parties thereupon entered into the written contract hereinbefore set forth.

There is a sharp and irreconcilable conflict in the testimony as to whether Nimmo ever made an estimate of the timber, or whether he had any authority to offer the timber for sale on that

basis; but the conclusion which we reach makes it unnecessary to settle the conflict and determine where the preponderance of the testimony lies.   We conclude that appellee has failed to establish any right to have the contract carried out, even if we accept as correct its own version of the facts.   It is not claimed that appellee, at any time during the life of the contract, performed, or offered to perform, it by having the estimate of the timber made, or that it was prevented by the Stoneman-Zearing Lumber Company from taking steps to estimate the timber. It is not claimed that the terms of the written contract were changed in any way after its execution, or that Nimmo, or any other agent of the Stoneman-Zearing Lumber Company, agreed, after the execution of the contract, that appellee might take the timber upon the estimate previously made.   Appellee, on the contrary, bases its claim entirely on the ground that Nimmo represented to its manager, in the negotiations leading up to the execution of the written contract, that he had estimated the timber at a million and a half feet and offered to let appellee have it on that estimate, then or any other time within the life of the contract.   The writing itself must be accepted as the sole evidence of the agreement between the parties.   No effort is made to reform it; and, if that be attempted, the testimony is wholly insufficient to accomplish such end.   The parties reduced their agreement to writing, and by that alone are their rights to be tested.   It is an inflexible rule of evidence that all antecedent proposals and negotiations become merged in a written contract, which can not be varied by parol testimony. This is elemental.   Appellee declined to accept the alleged offer of sale of the timber on the basis of a million and a half feet, and elected to enter into a written contract for an option to purchase on an estimate thereafter to be made in a certain way.   The effect of the written contract was to withdraw the alleged offer of sale on the basis named and to substitute therefor an offer to sell on the basis of another estimate, and appellee acquired by the contract merely the right to accept the offer within the time specified, as it was not a contract of sale but only an option to purchase.   *Bonanza Mining & Smelter Co.* v. *Ware*, 78 Ark. 306.   If appellee intended to preserve its right to accept the estimate of Nimmo, it should have caused that to be inserted in the written instrument which became the

sole evidence of the agreement.    After having failed to do so, it is barred by well-settled rules of evidence from seeking now to engraft the provision upon the written contract.    It is a mistake to assume that the provision in the contract for an estimate of the timber to be made in a certain way was exclusively for the benefit of appellee.    To thus construe would be to read something into it which is not found there.    When appellee rejected the alleged offer of Nimmo to let the timber go at his estimate of a million and a half feet, then the Stoneman-Zearing Lumber Company elected to prescribe other terms in the written contract upon which it was willing to sell the timber.    Those terms were prescribed for the benefit of both parties to the contract, and it is easy to see why each party wanted a thorough and careful estimate made of the timber, so that its true value according to the price named in the contract could be ascertained.    The timber estimate made by Nimmo at the time of the purchase of the land, was, confessedly, only a rough and inexact one.    The owner may have been willing, when the offer of sale of the timber was first made, to sell on the Nimmo estimate; but, as that offer was not accepted, it is reasonable to suppose that a more careful estimate was desired.    At any rate, the written contract so provides, and we are not at liberty to disregard the plain terms of the contract, for to do so would be to make a contract between the parties which they did not make for themselves.    If, after the execution of the contract, the Stoneman-Zearing Lumber Company had offered to let the timber go under the contract at the original Nimmo estimate, and there had been a timely acceptance of that offer, it would have operated as a new contract, superseding the old one, and the making of another estimate in accordance with the terms of the contract would have been waived.    But such is not the case.    It is not claimed that any such offer was made after the execution of the contract, and there is not a scintilla of evidence that Nimmo had any authority to change the contract, even if he had attempted to do so, after its execution, by offering to let appellee have the timber upon the old estimate.    The contract being one merely for an option to buy, the specified time for performance was of its essence; and, before appellee can claim the right to enforce it, it must show performance on its part, or an offer to perform the contract within the time

specified; otherwise its rights therein ceased.  *Indiana & Arkansas Lumber Co.* v. *Pharr*, 82 Ark. 573.

As the conclusion which we have thus reached is decisive of the right to enforce the contract, other phases of the case need not be discussed.  The decree is therefore reversed, and the cause is remanded with directions to dismiss the complaint for want of equity.