**UNITED STATES of America,**
**Plaintiff,**

v.

**677.50 ACRES OF LAND IN MARION COUNTY, KANSAS, Katherine E. Vogel et al., and Unknown Owners, Defendants.**

**No. T–3545.**

United States District Court
D. Kansas.

March 11, 1965.

Newell George, U. S. Atty., Elmer Hoge, Asst. U. S. Atty., Topeka, Kan., Frank E. McAnear, Atty., Dept. of Justice, Washington, D. C., for plaintiff.

Marlin Brown, of Brown & Johnson, Council Grove, Kan., for defendant landowners.

TEMPLAR, District Judge.

This action was commenced on April 24, 1964, and plaintiff filed its Declaration of Taking and Complaint for the purpose of acquiring, among other properties, Tract No. 111 in the Marion Dam & Reservoir project, same being described as the Northeast Quarter of Section 28, Township 19 South, Range 3 East in Marion County, Kansas.

There were other adjoining tracts described in the Declaration and the Complaint in which the full fee simple interest was taken, (Tracts 104 and 108), but as to Tract 111, the Declaration of Taking and the Complaint states that

"(b) As to Tract No. 111, the fee simple title, subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines, reserving to the owner or owners of the subsurface estate, or any interest therein his or their heirs, administrators, executors, successors and assigns, all oil, gas and other minerals in and under said land, with full rights of ingress and egress for the purpose of exploration, development, production and removal of oil, gas and other minerals which may be produced from said land."

Notice of condemnation was then served upon the owners of the land in controversy and they filed a response which alleges among other things the following:

"Further, said defendants allege and state that the fee simple title of said tract is condemned by plaintiff, reserving to the owners the subsurface estate, or any interest therein, their heirs, administrators, executors, successors and assigns, all oil, gas and other minerals in and under said land, with full rights of ingress and egress for the purpose of exploration, development, produc-

tion and removal of oil, gas and other minerals which may be produced from said land; that there are producing oil wells located upon said tract and locations for further exploration; further that said tract will be flooded upon closure during the year 1967 by the conservation pool of the Marion Dam and Reservoir and that upon such flooding, it will be impossible to produce such oil, or gas, now existing, and to make further explorations; that subsurface estates adjoining this tract are being condemned in this action and that these landowners have been notified by the plaintiff through and by its agent; that the subsurface estate of this tract is to be later condemned, in a separate action; and landowners move that all right, title and interest in and to the subsurface estate, or any interest therein including all oil, gas and other mineral, together with all rights of ingress and egress over the surface of the land for the purpose of exploration, development, production and removal of said oil, gas and other minerals, together with all right, title and interest in and to the structures and improvements now situate on and/or in said land which are owned or used in connection with the subsurface estate, owned by these landowners be condemned in this action; together with the surface rights thereof, all as and in one action."

To this pleading (referred to by plaintiff as an answer), plaintiff filed a motion to strike the portion alone quoted on the grounds that the acquiring agency has the exclusive right to determine what estate is to be taken and acquired by the plaintiff and that the Court has no power to enlarge upon the estate taken as set forth in the Declaration of Taking.

The Court has on two occasions heard evidence on the issue raised by plaintiff's motion to strike from defendants' answer (motion) the objectionable portion of defendants' answer.

Plaintiff contends that the acquiring agency is the sole judge of what estate it will acquire in the land taken and that no court, including this Court, has any power to enlarge that estate and no power to require the agency to take a larger estate than that which is set forth in the Declaration of Takings. Plaintiff's briefs contain citations of many respectable authorities to substantiate this proposition of law as a general principle.

The tract in controversy is very close to the axis of the proposed dam. The dam will impound water to a depth of some 60 feet over the tract. The dam is designed to permanently impound a great quantity of water in the reservoir established by its creation.

The evidence offered by plaintiff relating to plaintiff's plan for dealing with this valuable property right after it is permanently submerged under 60 to 70 feet of water is neither clear nor satisfactory. Actually, there is no formulated plan on the part of plaintiff.

Plaintiff offered, for the Court's consideration, a communication dated October 27, 1964 addressed to the United States Attorney for Kansas and signed by C. E. Guthrie, Chief Real Estate Project Office of U. S. Army Engineers, District of Tulsa, which reads in part:

"In connection with Item No. 7 concerning reservations of oil and gas, minerals in the immediate area of the dam site will be acquired in fee. In the area outside of the dam site, the normal policy will be to acquire only the right of the Government to flood and submerge the mineral interest; however, when the cost of subordination of the oil, gas, and other minerals, together with the relocation cost of providing pipelines and public utilities, approximates or exceeds the fee value of the mineral estates, the minerals will be purchased in fee, based upon economic justification. In connec-

tion with producing minerals, acquisition of either subordination or fee interest in the mineral estates will, under present policy, be deferred until near completion of the project, which is now scheduled for approximately 1 July 1967. A recent check of the reservoir area indicates approximately 40 to 45 oil wells producing at this time."

Plaintiff offered as a witness on hearing of its motion one David Helms, Chief of Real Estate Division, Tulsa District Office of Army Engineer Corps, and from his testimony which was not controverted it appears that the project, (construction of dam) will be completed in 1967 and clearing contracts will be let to require clearing of the area by March 1966. No definite plan for acquiring the mineral rights which will be submerged in 60 to 70 feet of water has been formulated following closure of the dam. It would appear to this Court from the evidence offered by plaintiff, that the portion of the fee not acquired by condemnation in this proceeding, at this time, may at a later time be acquired by purchase, by a later condemnation, or it may be that no action at all may be taken by plaintiff, leaving defendants to that remedy, if any they might have, under the Tucker Act in Federal District Court or through the Court of Claims. It is arguable whether such remedies are adequate. Certainly they are far less than satisfactory to a landowner whose property is made inaccessible to him at the whim of an acquiring agency which has the power to exclude him from it without at the same time making provision to comply with constitutional requirements of just compensation.

The plaintiff insists that it may proceed in the manner indicated and that the courts have no right to question or inquire into its purpose or its reasons for taking less than the fee simple title of real property even though the practical effect of such taking will be to leave to the landowner no practical use of the remaining portion of the property condemned, nor even access to it.

While the plaintiff may have the unrestricted right to acquire any estate in land it deems sufficient for its purposes, there is a corollary to such right and this is, that though the estate taken be a limited one, the determination of just compensation required by the Fifth Amendment to the Constitution must be made by the courts, and this function is judicial, not executive. The landowner is entitled to his day in court, and the ascertainment of the amount to satisfy the constitutional requirement of just compensation is established by judicial inquiry under judicially determined rules of compensation.

Plaintiff in this case must be reminded that we deal here with a constitutional provision that declares, "nor shall private property be taken for public use, without just compensation." This provision conditions the otherwise unrestrained power of the plaintiff to expropriate, without compensation, whatever it decides it needs.

If in this case the plaintiff is permitted to condemn only the surface rights of the real property involved, and thereafter place the remaining portion of the property out of the landowners' reach for any practical use, then a way has been found to defeat the mandate of the Fifth Amendment for just compensation in all condemnations except those in which the government decides to acquire the full fee simple title.

Where the government does not take the entire interest of the landowner, but develops a form of procedure which avowedly is intended to take only a bit of the landowners' interest at a time, "proceeding to chop it into bits, and in which it takes only what it wants, however few and minute, and leaves him holding the remainder, which may then be altogether useless to him", the mandate requiring "just compensation" for such taking has not been met. As has

been so pertinently said by the United States Supreme Court: [1]

> "In its primary meaning, the term 'taken' would seem to signify something more than destruction, for it might well be claimed that one does not take what he destroys. But the construction of the phrase has not been so narrow. The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking."

The applicable rule appears to be that just compensation means "the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his land had not been taken." [2]

Ordinarily when land is taken in fee simple the rules for determining compensation are well established, but where, for some reason, the government proposes to take the surface of the land with the announced plan and purpose to permanently submerge it under many feet of water impounded, then it remains to be determined by the triers of fact, either a jury or a commission under Rule 71A(h), what, if anything, is left to the landowner. When this is found, then the value of the remainder can be deducted from the value of the complete or fee simple interest in the land and an award of just compensation will then be fairly and more accurately arrived at. [3]

The government may take what it deems necessary and where less than the fee is condemned, the goverment, or its agency acquires only what it expressly takes, other interests and rights remaining in the landowners. But where less than the fee is taken, diminution in the market value of what is left is the measure of compensation. [4] The question is "[w]hat difference would it make in the market value of the land." [5]

A landowner is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more. The determination of just compensation is to be made in the light of all the facts affecting the market value that are shown by the evidence, taken in connection with those of such general notoriety as not to require proof. Elements affecting value that depend on events or combinations of occurrences which are fairly shown to be reasonably probable, may be considered, but events or occurrences that are within the realm of possibility, but are not fairly shown to be reasonably probable, should be excluded from consideration.

In this case the Court finds from the evidence before it that the permanent inundation of defendants' land with more than 50 feet of water, is more than a probability; it is a certainty. It is proper to consider in determining just compensation, the influence such a circumstance would have on a prospective purchaser of the remaining portion of the land. With this determination made, the jury or commission appointed to consider the question of just compensation should proceed to determine:

*First:* The full, fair and reasonable market value of the defendants' prop-

---

1. United States v. General Motors Corp., 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311.

2. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

3. United States v. 9.94 Acres of Land, D.C., 51 F.Supp. 478.

4. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236.

5. United States ex rel. and for Use of Tennessee Valley Authority v. Susong, D. C., 87 F.Supp. 396, 399.

**324**

erty at the time of taking from it the limited estate by plaintiff.

*Second:* The jury or the commission should then proceed to establish and determine the value of what is left to the landowners. Then,

*Third:* There should be deducted the value of what, if anything, is left to the landowners from the full value of the fee simple title. The difference will be the amount of just compensation to which defendant landowners are entitled.[6]

Anything less than this would amount to a denial of just compensation and due process of law which are the landowners' constitutional rights.

Plaintiffs have suggested to the Court that if defendant landowners are damaged beyond the purview of what the agency plans at this time to take, the defendants may at some future date seek the remainder of the just and adequate compensation to which they are entitled under the rights granted them by the Tucker Act. That such additional damage will develop is not questioned; that it is a legal and factual certainty is not denied.

The ointment offered by proceedings under the Tucker Act to a landowner is scarcely adequate for the wound inflicted here by plaintiff. The Constitution nor the Act under which the property here involved is taken makes no provision for recovery of damages under the Tucker Act in event the landowner fails to receive adequate compensation in this proceeding. In any event it is this Court's responsibility to see that the constitutional requirement is complied with by the plaintiff here.

This suggestion offered by plaintiff brings up another proposition which requires consideration in this case. Since the plaintiff contemplates the acquisition in some manner of the interest remaining in the landowner at some time in the future, and certainly this should not be at a date later than that on which

the landowners' interest will be submerged by water in the contemplated reservoir, then, if the parties cannot agree upon the amount to be paid, the Court will, upon the application of either party, have a jury or a commission assess the amount then due, and for that purpose the Court will retain jurisdiction of this cause.

The plaintiff's motion to strike from defendants' answer (motion) the portion referred to above is overruled. Instructions consistent with the foregoing memorandum shall be given the jury or the commission to which is submitted the issue of just compensation in this case.

6. 29A C.J.S. Eminent Domain § 143, p. 603.