UNITED STATES of America, Plaintiff,

v.

**3,035.73 ACRES OF LAND, MORE OR LESS, SITUATED IN MONROE COUNTY, STATE OF ARKANSAS, and S. Norris Broadhead et al., and Unknown Owners, Defendants.**

No. H–C–77–74.

United States District Court,
E. D. Arkansas, E. D.

Sept. 10, 1979.

Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

James Bruce McMath, McMath, Leatherman & Woods, Little Rock, Ark., for defendants Broadhead.

W. Harley Cox, Jr., Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for defendant Tupelo Timber, Inc.

John Eldridge, Eldridge & Eldridge, Augusta, Ark., for defendant Franklin Collier.

## MEMORANDUM OPINION

HARRIS, Senior District Judge.

By complaint filed on November 11, 1977, the United States commenced this action for condemnation of the lands described therein situated in Monroe County, Arkansas, the lands being acquired as fish and wildlife habitat to mitigate the environmental impact of the construction of the Cache River Basin project. The lands are heavily forested in hardwood and wetland timber, the preservation of which is necessary to carry out the purposes of the acquisition.

S. Norris Broadhead, Paul E. Broadhead, and the Estate of Sam E. Broadhead, deceased, are the fee owners of the lands, with the exception of one small tract not involved in resolution of the question now being considered. The Broadheads had entered into an arrangement with Tupelo Timber, Inc., on the basis of a written instrument dated July 29, 1977, and entitled "Option to Purchase Standing Timber".

Tupelo Timber, Inc., contends that the instrument conveys such an interest in the lands condemned as to entitle Tupelo to the payment of just compensation for the taking of the lands and timber in this proceeding.

The Broadheads and the United States insist that Tupelo acquired no such interest in the lands as would entitle it to the payment of just compensation, and that the Broadheads are entitled to receive the full amount deposited to secure the payment of just compensation, there being agreement between the United States and the Broadheads as to the amount of just compensation due for the taking. The Broadheads have filed a Motion seeking to withdraw the deposit of estimated just compensation. Tupelo objects to such withdrawal, contending that it is entitled to a part thereof.

The Broadheads have filed a Motion, ostensibly seeking a declaratory judgment, wherein the Court is asked to determine whether Tupelo has such an interest in the lands condemned as to entitle it to the payment of just compensation. The Court will treat this as a Motion for Summary Judgment, pursuant to Rule 56, Federal Rules of Civil Procedure. Tupelo, the United States, and the Broadheads have filed appropriate pleadings and supporting briefs as to the applicable law. Affidavits and documents have been filed which, the Court finds, leave no genuine issue of fact in dispute material to a resolution of the dispute, and the issues may be determined as a matter of law. Partial Summary Judgment pursuant to Rule 56 is, therefore, appropriate.

The "Option" provides that the Broadheads, for one dollar and other valuable consideration:

"... give and grant unto Tupelo ... the right, privilege and option to purchase all or any part of the standing timber situate ... on the lands ... up to a total of 4,000,000 board feet ... at a price of $50.00 per thousand feet ... for a period of three years beginning August 1, 1977 and ending July 31, 1980."

Payment was to be made on a weekly basis, according to the scale of the timber cut and removed. Grantors warranted their fee simple title and covenanted to save grantee harmless from any claims or demands of others to the ownership.

In addition to the recited consideration of one dollar, the affidavit of Sam Brown and the Release furnished therewith show the additional consideration of a release of obligations of the Broadheads under a pre-existing Timber Cutting Contract and Agreement to Deed Lands by Joe L. Brown. The Court finds that the cancellation of the pre-existing agreement and the release of any accrued obligations of the Broadheads under the prior agreement supply ample and sufficient consideration to uphold the Option against the claims of the Broadheads of lack of consideration for the Option.

The Court, therefore, finds and concludes that, as between Tupelo and the Broadheads there existed at the time of the filing of the condemnation action herein a valid agreement as to the lands condemned under which Tupelo had the right to cut and remove up to 4,000,000 board feet of standing timber and to pay for such timber, as it was cut and removed, a price of $50 per thousand board feet. From examination of the responses to interrogatories it would appear that the contract price may be considerably less than the market price for such standing timber in the area at the date of condemnation.

By reason of the taking by the United States, Tupelo has been deprived of the right, pursuant to the Option, to enter on the lands and cut and remove the timber standing thereon. If the instrument entitled "Option" did grant to Tupelo an equitable or legal title to the standing timber, that would constitute an interest in real property under the laws of the State of Arkansas, and would entitle Tupelo to an award of just compensation in this proceeding.

Under the law of the State of Arkansas it is well settled that a deed to growing or standing timber authorizing the grantee to cut and remove the trees within a specified time is a conveyance of an interest in real property, creating a new and separate estate in the grantee. See *Henry Quellmalz Lumber & Mfg. Co. v. Roche*, 145 Ark. 38, 223 S.W. 376 (1920). It has been

held that in order to convey legal title to timber in place it is absolutely necessary that the conveyance contain words expressing transfer of title, such as "grant, bargain and sell" or words of similar import. *Griffin v. Ayer-Lord Tie Co.*, 109 Ark. 223, 159 S.W. 218 (1913). However, a more recent case, *Schnitt v. McKellar*, 244 Ark. 377, 427 S.W.2d 202 (1968), the Arkansas Supreme Court held that a deed or any other contract must be examined to determine the intent of the parties, and that the terms of the instrument, not its name, determine its character.

*Zearing v. Crawford, McGregor & Camby Co.*, 102 Ark. 575, 145 S.W. 226 (1912), involved an option agreement, the terms of which are contrasted to the instrument between the Broadheads and Tupelo herein. The Zearing option contemplated a future estimate of timber in place, the Tupelo option did not require such an estimate. The Zearing option provided for payment for the timber on the basis of the estimate to be made while the Tupelo option provided for payment weekly as the timber was cut. The Zearing option contemplated execution of a timber deed to convey the timber, while the Tupelo option required no other instrument to pass title to the timber. The agreement in Zearing was clearly a true option, with the requirement for acceptance and payment of consideration before receipt of a deed. The instrument received by Tupelo gave it the present right to go upon the lands and cut and remove the timber standing in place thereon. Payment was a condition precedent in Zearing, while payment was to be made weekly as timber was cut and removed by Tupelo. Further, Tupelo gave a warranty of title to the lands and timber involved.

In examining the "Option" of Tupelo, it is apparent that a present right is conveyed by the Broadheads to Tupelo to enter upon the lands described, with rights of ingress and egress, and to cut and remove the timber standing in place on the lands described in the exhibit to the agreement. Rather than to provide for payment under an estimate of the timber that might be in place, the parties agreed to provide for payment of timber actually cut and removed on a "per thousand" board foot measurement. In this manner, they avoided any overpayment or underpayment on the basis of a mere estimate and avoided any possibility that Tupelo might pay for the timber but be unable to harvest it during the term due to the weather conditions, such as flooding. It appears from the affidavit of Mr. Brown and the release exhibited that a prior agreement was released and substantial lands deeded back to the Broadheads as a part of the consideration for this "Option" agreement. From the pleadings, affidavits and exhibits, it appears that the market value of the standing timber in place on the lands involved might be in excess of the contract price of $50 per thousand set in the "Option". It is not necessary to conclude that the Broadheads were "cheated" on the price retained in the agreement, as suggested by their attorney, in order to find that the market value of the timber is greater than the contract price. Apparently the price was fixed on the basis of negotiation by well experienced persons on both sides, and as a continuation of a pre-existing and ongoing relationship between the parties with respect to the timber.

To compare the effect and substance of the "Option" with a standard Timber Deed, both provide for immediate right to enter the lands and cut and remove standing timber. Both provide for ingress and egress on the lands upon which the timber stands. Both provide for payment of compensation to grantor, either in a lump sum on the basis of an estimate or during the progress of cutting and removal on the basis of the amount actually cut and scaled. Both provide ordinarily for a fixed term within which the timber must be cut and removed and after which the grantee loses its right to enter the lands or to harvest the timber.

The Court does not perceive any real or substantial difference between the rights which are conferred by a timber deed and the rights conferred upon Tupelo by the "Option". Only the form and wording are different. In substance, Tupelo had under the agreement with the Broadheads every

644

right that the holder of title to standing timber would have had under a deed. No further act on the part of the Broadheads was necessary or contemplated to vest these rights to the standing timber in Tupelo. The Broadheads warranted title to the timber, and agreed to hold Tupelo harmless from claims or demands of others to ownership.

■ From an examination of the "Option", the Court can only conclude that under the applicable laws of the State of Arkansas Tupelo was, at the time the complaint in condemnation was filed, the owner of an interest in the lands condemned which was of such a nature and character as to entitle Tupelo to payment of just compensation for its taking. According to the exhibits, Tupelo had already entered upon the lands and had cut and removed 220,892 board feet of timber between the date of the agreement and January 7, 1978, when operations ceased under directive of the Government. Some 3,779,108 additional board feet remained subject to be cut and removed under the agreement. Whether the right to cut and remove this amount of timber had a fair market value in excess of the $50 per thousand reserved must be determined, and Tupelo must be compensated for that interest in the standing timber as a valuable property right taken by the condemnation.

Of course, the United States is only obligated to pay as just compensation the fair market value of the lands, with the timber in place thereon. In this case, both by prior contract with the Broadheads and by stipulation between the Broadheads and the United States, those parties have fixed the amount of just compensation to be paid. One deposit in the amount of their agreement has been fixed. It appears, from the discovery material and affidavits, that the amount deposited would be ample and sufficient to compensate both Tupelo and the Broadheads for their respective interests in the land. According to these materials, the claimed damages of Tupelo should not exceed, under its own estimate of value, $388,-000.

Under the circumstances, the Broadheads will be permitted to withdraw from the deposit of estimated just compensation in the registry of this Court in this cause the balance of that deposit after deduction of the sum of $388,000 and the proportionate interest accrued on that amount while on deposit. Should the Broadheads and Tupelo be able to agree upon a joint withdrawal of the $388,000 and interest accrued thereon, that amount may be withdrawn jointly, with the entitlement of the parties to be ultimately resolved by the Court after hearing.

In making this determination, the Court is not unmindful of the contentions of the Broadheads and the United States that the "Option" does not create a compensable interest in the lands. The Court has carefully considered the cases which were cited such as *U. S. v. 677.50 Acres of Land in Marion County Kansas, Katherine E. Vogel, et al., and Unknown Owners*, 239 F.Supp. 318 (1965). The interest of Tupelo herein is much more analogous to the right of a mineral owner than a contract purchaser of oil, as was involved in that case. The "Option" involved herein did create in Tupelo a present property right in the standing timber for valuable consideration paid and to be paid in the future.

A separate Order will be entered in accordance with this Memorandum Opinion. Counsel for Tupelo will, after conferring with counsel for the Broadheads and the United States, prepare and furnish to the Court and those counsel a proposed precedent for such Order, granting Partial Summary Judgment in favor of Tupelo and providing for dispersal of the amount of estimated just compensation deposited in the registry of the Court. This precedent will be furnished not less than 15 days after this date, in order that these matters may be resolved at or prior to the docket call scheduled for September 26, 1979.